# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-1287

_____

Julio Cesar Briones-Sanchez,      \*

        \*

    Petitioner,        \*

        \*     Petition for Review of an

    v.        \*     Order of the Immigration

        \*     and Naturalization Service.

Gerard Heinauer, District       \*

Director, Immigration and      \*

Naturalization Service,       \*

    Respondent.

_____

Submitted: October 9, 2002

Filed:   February 10, 2003

_____

Before HANSEN, Chief Judge, HEANEY and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

HANSEN, Circuit Judge.

Julio Cesar Briones-Sanchez petitions this court for review of an order entered by the Respondent, District Director of the Immigration and Naturalization Service (INS), reinstating his prior order of deportation and ordering his removal under § 241(a)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(5), enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act

of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).[1]  We have jurisdiction to review an INS order to reinstate a prior deportation order pursuant to § 242 of the INA, 8 U.S.C. § 1252 (2000).

## BACKGROUND

Julio Cesar Briones-Sanchez (Briones), a native of Mexico, came to the United States  in 1980 with his mother when he was seven months old.  His mother became a permanent legal resident in 1988.  Briones married a United States citizen, and his two children are United States citizens. Although Briones might have been eligible to become a legal resident by virtue of his mother's status, she failed to register Briones for some of the relevant programs while they were available.  In 1997, Briones's mother filed an immediate relative petition with the INS, which was approved and made him eligible to receive an immigrant visa.  The waiting list for such visas, however, was years long.  In 1999, Briones engaged the services of an immigration attorney to assist in his application for adjustment of status.  He states that he immediately forwarded all correspondence from the INS to his attorney. Briones later discovered, by a letter he received from the City of Chicago Department of Consumer Services dated March 30, 2000, that his "attorney" was, in fact, merely a lay person engaged in an elaborate scheme to defraud immigrants.

---

[1]For the sake of uniformity, we will cite to the INA section numbers throughout.  Accord Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 861 n.1 (8th Cir. 2002), cert. denied, 2003 WL 98466 (Jan. 13, 2003) ("Immigration law can be confusing to the outsider because experts usually refer to the statutes by their INA and IIRIRA section numbers, while most of us have access only to the codified version of those statutes. With some reluctance, our opinion will yield to this reality by referring to the statutes at issue by their INA and IIRIRA section numbers, with an initial cross-reference to their very different section numbers in Title 8 of the United States Code.").

Later in 1999, after being denied lawful permanent resident status, Briones was notified by certified mail that removal proceedings had been commenced against him. He failed to appear for both the initial and rescheduled removal hearings. On January 25, 2000, the immigration judge issued an order of removal in abstentia and, on March 14, 2000, sent a notice for Briones to appear at INS offices. Briones alleges that he had no knowledge of the removal order, but he does not deny receiving the March 14, 2000, "bag and baggage" letter. Briones did not appear at INS offices and failed to appeal the removal order or file a motion to reopen the removal proceedings.

On November, 13, 2000, Briones appeared at INS offices in Omaha, Nebraska, seeking to adjust his status based on his marriage to a United States citizen. Pursuant to the warrant of removal, his petition was summarily denied and he was arrested. He did not seek to reopen the removal proceedings at that time. Two days later, on November 15, 2000, he was deported from the United States. Approximately eight months later, he illegally reentered the United States without inspection. In December 2001, he was arrested in Iowa for attempting to use a false identity to obtain a driver's license. The District Director of the INS reinstated the previous removal order, and Briones was deported for a second time on January 15, 2002.

**DISCUSSION**

Briones alleges that the reinstatement of his prior deportation order pursuant to § 241(a)(5), without a hearing to evaluate the sufficiency of that order, denied him due process. Essentially, Briones is challenging both the constitutionality of the reinstatement procedures used and of the statute itself. First, Briones asserts that the failure to hold a hearing in conjunction with the reinstatement of his removal order violated procedural due process. Second, Briones alleges that the provision in § 241(a)(5) prohibiting review or reopening of the initial removal order is a further denial of due process. While we agree that deportable aliens are protected by the constitutional right to due process, see Plyer v. Doe, 457 U.S. 202, 210 (1982), we

find that the reinstatement and deportation procedures in this case comported with the requirements of the Constitution.

Section 241(a)(5) was enacted to streamline the removal process for aliens who illegally reenter this country after having been once deported.

> (5) Reinstatement of removal orders against aliens illegally reentering
>
> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (2000). Under this provision, a finding by INS officers that Briones illegally reentered the United States after being deported is sufficient to reinstate his removal order. See 8 C.F.R. § 241.8(a) (2003). Furthermore, "[t]he alien has no right to a hearing before an immigration judge" and is entitled only to written notice and an opportunity to "make a written or oral statement contesting the determination." Id. § 241.8(a), (b). Briones declined to make a statement contesting the reinstatement of his removal order, but he alleges that § 241(a)(5) violates procedural due process because it denies any opportunity for a hearing prior to reinstatement of a removal order. Although we have previously declined to decide this issue, see Alvarez-Portillo, 280 F.3d at 867, we have opined that the "streamlined notice and opportunity to be heard afforded illegal reentrants under 8 C.F.R. § 241.8 seem quite appropriate when the only issues to be determined are those establishing the agency's right to proceed under § 241(a)(5) – the alien's identity, the existence of a prior removal order, and whether the alien has unlawfully reentered." Id.

-4-

In order to succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him. See United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995). Therefore, Briones must show that, had there been a hearing, the INS would not have reinstated his removal order. See id. ("Actual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." (citation and internal quotations omitted)). The only claim that Briones sought to raise in a hearing was the alleged deficiency of the original removal order. He alleges that he was denied due process in the initial proceedings because he did not receive sufficient notice of the initial removal order and because he received ineffective assistance of counsel. However, the initial order "is not subject to being reopened or reviewed." INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (2000). As required by this provision, even if Briones had been granted a hearing, his collateral attack on the original removal order would have been precluded. Given the limited scope of the reinstatement proceedings, Briones cannot demonstrate any prejudice resulting from the lack of a hearing.

In response to this rationale, Briones argues that § 241(a)(5)'s prohibition on collateral challenges to the initial removal order in removal order reinstatement proceedings is itself a violation of due process. We reject this argument for two reasons. First, in addition to the initial removal proceedings themselves, aliens subject to deportation have a full range of administrative and judicial procedures available to them. See, e.g., 8 U.S.C § 1229a(b)(5) (2000) (providing a mechanism for aliens to file a motion to reopen removal proceedings and to seek judicial review of the disposition of the motion). It is through these procedures that an alien subject to deportation may raise such claims as ineffective assistance of counsel or insufficient notice. After exhausting these initial administrative remedies, see 8 U.S.C. § 1252(d)(1) (2000), aliens may also file a petition for a writ of habeas

corpus.[2] These procedures are sufficient for the INS to assume in removal order reinstatement proceedings, as § 241(a)(5) requires, that the original removal order is valid and constitutional. Thus, the limitations on the scope of inquiry enunciated in § 241(a)(5) do not violate an alien's right to due process. Accord Alvarenga-Villalobos v. Ashcroft, 271 F.3d 1169, 1174 (9th Cir. 2001) ("[A]nother hearing is denied only to those aliens who have already been excluded, deported, or removed after having been given one full and fair hearing, including the right to judicial review of that hearing. To preclude a second bite at the apple after an illegal reentry does not offend due process.").[3]

Second, Briones once again has failed to demonstrate prejudice. Even if the statute permitted the INS or this court to review the underlying initial removal order, Briones cannot show that the order necessarily would be vacated. The district court in Briones's related habeas proceedings found that he had received notice, on more than one occasion, of the initial removal proceedings pending in Chicago. Briones does not dispute that he received a "bag and baggage letter" in March 2000. At a minimum, he had eight months before his arrest and initial deportation in November 2000 to contest the initial removal proceedings. Additionally, the INS asserts, and

[2]We note that Briones did file a habeas petition after his removal order was reinstated. The district court denied that petition for lack of jurisdiction, finding that inquiry into the initial order was barred and that Briones had failed to exhaust his administrative remedies. Briones's application for a certificate of appealability from that denial is currently pending in this court.

[3]Even in the criminal arena, courts will not review the initial removal proceeding unless the alien demonstrates that he was effectively denied judicial review in that proceeding. See United States v. Mendoza-Lopez, 481 U.S. 828, 838-39 (1987). This did not occur here. Briones was not denied judicial review in the original removal proceedings. Rather, he waived his opportunity for review by failing to file a motion to reopen the initial proceedings before he was initially deported, and then by reentering the country illegally.

Briones does not deny, that at the time of his initial removal, he was a deportable alien.

Although the separation of a family is an unfortunate result, we note that Briones had ample opportunity to avoid this situation. He lived in this country for nearly twenty years before attempting to legalize his status. His choice to reenter the country illegally effectively precluded any further rights he may have had to seek review of his initial removal proceedings. Given the importance of finality in immigration proceedings, the procedural protections generally afforded to aliens subject to deportation, and the fact that Briones has failed to demonstrate prejudice resulting from the denial of a hearing, we conclude that there has been no due process violation.

For the foregoing reasons, we deny the petition for review and affirm the reinstatement of the removal order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.