# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 01-3618

_____

Francisco Tomas Lopez,                    *
                                          *
        Petitioner-Appellant,        *
                                          *    Appeal from the United States
    v.                              *    District Court for the
                                          *    Southern District of Iowa.
Gerard Heinauer, District Director,       *
Immigration and Naturalization            *         [PUBLISHED]
Service,                                  *
                                          *
        Respondent-Appellee.         *


_____

Submitted: October 9, 2002
     Filed:   June 11, 2003

_____

Before HANSEN,[1] Chief Judge, HEANEY and MORRIS SHEPPARD ARNOLD,
    Circuit Judges.

_____

HANSEN, Circuit Judge.

_____

    [1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003.  He has been succeeded by the Honorable James B. Loken.

Francisco Tomas Lopez appeals the district court's[2] denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2241 (2000), in which he asserted that the removal reinstatement provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 8 U.S.C. § 1231(a)(5) (Supp. II 1996), had a retroactive effect when applied to him and violated his due process rights. The district court first concluded that it had jurisdiction to consider Lopez's habeas petition and then rejected Lopez's claims on the merits. We transfer this action which should have been brought directly in this court, construe it as a petition for review, and deny the petition.

I.

Lopez, a citizen of Guatemala, illegally entered the United States on or about January 3, 1993. The Immigration and Naturalization Service (hereinafter "the INS") instituted deportation proceedings, charging him with entering the United States without inspection. See 8 U.S.C. § 1251(a)(1)(B) (1994) (transferred to § 1227(a)(1)(B) (Supp. II 1996)). The INS sent a notice of hearing, informing Lopez of the scheduled date, March 28, 1997, for a hearing before the immigration court. Although Lopez signed for and received this notice on March 5, 1997, he failed to appear at the scheduled hearing. The immigration judge found Lopez deportable and issued an order of deportation to Guatemala on March 28, 1997. Lopez never sought judicial review of that deportation order. The INS sent Lopez a notice warning him that, because he had been found to be deportable, he was prohibited from entering the United States for a period of ten years from the date of his removal.

On April 1, 1997, the reinstatement provision of IIRIRA became effective. 8 U.S.C. § 1231(a)(5) (Supp. II 1996) (authorizing the Attorney General to reinstate

_____

[2]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

2

automatically a prior order of deportation against an alien who illegally reenters the United States after being deported).  On September 22, 2000, Lopez was deported, but he illegally reentered the United States in June 2001.  On August 2, 2001, the INS automatically reinstated Lopez's prior removal order[3] pursuant to 8 U.S.C. § 1231(a)(5).

Lopez filed a § 2241 petition for a writ of habeas corpus on August 17, 2001, challenging the reinstatement.  The district court denied habeas relief, and Lopez was deported to Guatemala once again on February 28, 2002.  Lopez now appeals the denial of his habeas petition.

## II.
### A.  Jurisdiction

The INS asserts that we lack jurisdiction to address this appeal.  The INS argues that Lopez cannot satisfy the "in custody" requirement under habeas corpus jurisprudence.  Alternatively, the INS asserts that a final order of removal or its reinstatement may be challenged only in the appropriate court of appeals through a petition for review filed within thirty days of the date of the order.

We first note that the "in custody" requirement of the habeas statute is satisfied as long as the petitioner was in custody at the time he filed his habeas petition. Carafas v. LaVallee, 391 U.S. 234, 238-40 (1968) (holding that once federal jurisdiction has attached, it is not defeated by the petitioner's release prior to completion of the proceedings on his habeas application); Beets v. Iowa Dep't of

---

[3]We make no distinction between the terms "deportation" and "removal."  See Omar v. INS, 298 F.3d 710, 712 n.2 (8th Cir. 2002) (noting that IIRIRA eliminated any distinction between deportation and removal proceedings).

Corr. Servs., 164 F.3d 1131, 1133 n.2 (8th Cir.) (same), cert. denied, 528 U.S. 825 (1999). Lopez was in custody when he filed his habeas petition.

We agree with the INS, however, that pursuant to the statutory scheme set forth by Congress, Lopez should have filed a petition for review in this court to challenge the § 1231(a)(5) order of reinstatement. See 8 U.S.C. § 1252(a), (b)(1), (2) (providing for judicial review of a final order of removal in the court of appeals if the petition for review is filed within thirty days of the date of the order); see also Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 868 (8th Cir. 2002) (reviewing a reinstatement order through a § 1252(a)(1) petition for review), cert. denied, 123 S. Ct. 864 (2003). Section 1252(a)(1) provides that judicial review of a final removal order "is governed only by chapter 158 of title 28," which sets forth rules pertaining to review of federal agency orders. 8 U.S.C. § 1252(a)(1) (emphasis added). Further, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" shall be available only through a petition for review brought in the court of appeals, and this jurisdiction is exclusive as to actions brought to adjudicate or execute removal orders. 8 U.S.C. § 1252(b)(2), (9), (g).

Although habeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum, see INS v. St. Cyr, 533 U.S. 289, 314 (2001), the statute here provides an adequate judicial forum, permitting the noncriminal deportee to file a petition for review in the appropriate court of appeals. Because judicial review was available to Lopez, the district court was not authorized to hear this § 2241 habeas petition. See Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001); Bini v. Aljets, No. 01-3234, 2002 WL 535083, at *1 (8th Cir. 2002) (unpublished) (holding district court lacked jurisdiction to entertain a challenge to a removal order because such challenges must be raised in a petition for review). Lopez filed the wrong action in the wrong federal court.

4

We nevertheless decline to dismiss for lack of jurisdiction in this instance, because the interests of justice warrant a transfer to this court. Federal courts are authorized to transfer an action to the proper federal court in order to cure a want of jurisdiction. 28 U.S.C. § 1631 (2000). Pursuant to § 1631, this court has the power to transfer to the proper federal court a case in which we lack jurisdiction, provided that the case would have been timely filed had it been filed in the proper court in the first instance. Park, 245 F.3d at 666-67. The purpose of the transfer statute is to aid parties who might be confused about which court has subject matter jurisdiction, and to preserve their opportunity to present the merits of the claim, which if dismissed for filing in the wrong court might subsequently be barred by a statute of limitations. Id. at 667. The transfer statute is mandatory, indicating that a court "shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631 (emphasis added).

The notice of appeal filed in this court would not have been a timely filed petition for review, but the action filed in district court was timely for purposes of 8 U.S.C. § 1252(b)(1). Therefore, while we lack direct authority under § 1631 to transfer this case to ourselves, the district court did and does have authority to transfer it to us. See Park, 245 F.3d at 667 (directing the district court to transfer a case seeking direct review of the INS's actions to the Ninth Circuit where the petitioner should have filed a petition for review). Transfer is required in this case because otherwise, the petitioner will have lost his opportunity to present the merits of the claim due to a statute of limitations bar, thus, the transfer is in the interest of justice. The odd posture of this case indicates that we should remand it to the district court and direct that court to transfer the case back to us so that we can consider what is already before us in this appeal. We conclude that it is unnecessary to jump through all of these procedural hoops. For the sake of judicial economy, we will deem this case properly transferred to us. We agree with the following statement:

> It would be a curious procedure to remand this case to the district court so that the district judge could decide whether or not to officially transfer it back to us. Nor is such a convoluted procedure necessary to a fair decision: it appears from the record that all the considerations relevant to the interest of justice are within our plain view.

In re McCauley, 814 F.2d 1350, 1352 (9th Cir. 1987). In the interest of justice, we therefore deem this case transferred to this court. See id.; Gallo-Alvarez v. Ashcroft, 266 F.3d 1123, 1128 (9th Cir. 2001). We now consider the merits of Lopez's claim as if he had filed a timely petition for review in this court.

## B. Retroactive Effect

Lopez argues that the § 1231(a)(5) reinstatement of his removal order has an impermissible retroactive effect because the initial removal order was entered prior to the enactment of the statute which now authorizes the reinstatement of it. He relies on Castro-Cortez, 239 F.3d at 1050-52, and Bejjani v. INS, 271 F.3d 670, 684-87 (6th Cir. 2001). We have since expressly rejected the retroactivity reasoning used by the Sixth and Ninth Circuits in those cases, Alvarez-Portillo, 280 F.3d at 864, and more importantly, this case is factually distinguishable from them. Contrary to the rejected reasoning in Castro-Cortez and Bejjani, we determined in Alvarez-Portillo that the new procedures set forth in § 1231(a)(5) did not result in an impermissible retroactive effect to an alien who had illegally reentered the United States before the statute's enactment. 280 F.3d at 861, 864. In this case, Lopez illegally reentered the country after the statute's enactment. No preenactment conduct is at issue. There can be no retroactive effect from applying IIRIRA's reinstatement procedures to Lopez where the statute was in effect at the time of his illegal reentry.

Lopez argues that the statute is retroactive because his initial deportation order was entered prior to the enactment of IIRIRA. We disagree. "No illegally reentering alien has a reasonable expectation that his prior deportation order will not be

6

reinstated for purposes of effecting a second removal." <u>Alvarez-Portillo</u>, 280 F.3d at 865. We have determined that by enacting "IIRIRA, Congress intended to reduce the delays incident to removing aliens who have illegally reentered. Illegal reentrants have no entitlement to such delays and no reasonable expectation that prior inefficiencies in the administration of our immigration laws would continue indefinitely." <u>Id.</u> at 866. Thus, the fact that Lopez's initial deportation order was entered prior to IIRIRA's enactment does not render impermissibly retroactive the INS's application of IIRIRA reinstatement procedures in this case.

We determined in <u>Alvarez-Portillo</u> that there could be an impermissible retroactive effect arising from IIRIRA's provision that an alien subject to reinstatement "'may not apply for any relief under this chapter.'" <u>Id.</u> (quoting § 1231(a)(5)). We acknowledged that a new statute may not be applied retroactively to deprive a criminal defendant of a defense that was available at the time his alleged crime was committed. <u>Id.</u> at 867. Again, however, retroactivity is not in play here because IIRIRA was in effect at the time of Lopez's actual deportation and his illegal reentry. Thus, Lopez has not been deprived of any substantive defenses that were available at the time of his illegal reentry conduct. Because IIRIRA was in effect at the time of his reentry conduct, its provisions appropriately define his rights.

## C. Due Process

Lopez argues that he was deprived of due process when he was not provided a new hearing before an immigration judge prior to his present deportation. The Supreme Court has long recognized that deportable aliens are entitled to constitutional protections of due process. <u>See</u> <u>Yamataya v. Fisher</u>, 189 U.S. 86, 100-01 (1903). We nonetheless reject Lopez's constitutional challenge on the basis that he cannot show any prejudice from the alleged error.

7

To demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice. United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995). "Actual prejudice results where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Id. (internal quotations omitted). We first note that Lopez was granted notice and an opportunity to be heard prior to his initial deportation, and he does not attempt to challenge the validity of the initial deportation order in this case. Furthermore, we have already determined that there could be no reasonable expectation that the prior deportation order would not be reinstated after an illegal reentry. Alvarez-Portillo, 280 F.3d at 865.

The regulations provide that an alien is subject to automatic reinstatement of a prior removal order upon a determination that the alien has been subject to a prior deportation order, the alien is correctly identified as an alien who was removed under a prior order, and the alien unlawfully reentered the United States after his removal. 8 C.F.R. § 241.8(a) (2001). Lopez admits to all of these predicate findings–his identity, his prior order of removal, and his illegal reentry. Thus, there is no doubt his deportation order would have been reinstated, and he would be statutorily ineligible for any relief even if he had been granted a new hearing before an immigration judge. Absent a showing of prejudice, Lopez cannot establish a due process violation. See Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 302 (5th Cir. 2002).

III.

We construe Lopez's habeas petition as a petition for review. Having considered and rejected his arguments, we deny relief.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.