06-5035-ag
Delgado v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2007

Docket No. 06-5035-ag

Argued: October 30, 2007             Decided: February 7, 2008

_____

MONICA TENESACA DELGADO, a/k/a MONICA PATRICIA TENESACA DELGADO,

Petitioner-Appellant,

v.

MICHAEL B. MUKASEY,[1] Attorney General of the United States,

Respondent-Appellee.

_____

Before: MINER and POOLER, Circuit Judges.[2]

Appeal from an October 26, 2006 decision by the United States Immigration & Customs Enforcement ("ICE") reinstating, in accordance with INA § 241(a)(5), 8 U.S.C. §1231(a)(5), an order of removal against petitioner-appellant, a native and citizen of Ecuador, following determinations that petitioner-appellant was not admissible because she had entered the United States without permission after having been removed, that no waiver is available for such inadmissibility, and that she was ineligible for any exception because ten years had not passed since she departed the United States and she did not seek permission to be admitted before she reentered.

Petition for review denied.

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), United States Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as respondent-appellee in this case.

[2] The Honorable Thomas J. Meskill, who was a member of this panel, passed away before oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. See 2d Cir. Interim R. 0.14(b).

MATTHEW L. GUADAGNO (Jules E. Coven, Kerry W. Bretz, on the brief), Bretz & Coven, LLP, New York, NY, for Petitioner.

ZOE HELLER (Peter D. Keisler, Assistant Attorney General, Terri J. Scadron, Assistant Director, Joshua Braunstein, on the brief) Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Respondent.

MINER, Circuit Judge:

Petitioner Monica Tenesaca Delgado, a native and citizen of Ecuador, petitions this Court for review of an October 26, 2006 decision by the United States Immigration & Customs Enforcement ("ICE") reinstating a prior order of removal against her. Earlier on the same date that the ICE issued its decision, the United States Citizenship and Immigration Services ("CIS") denied Delgado's application to adjust her status to that of a lawful permanent resident and denied her application for a waiver of her ineligibility for admission to the United States. The CIS found that Delgado was ineligible for adjustment of her status to that of a lawful permanent resident ("adjustment of status") because she had entered the United States without permission after having been removed. The CIS further found that no waiver was available for such inadmissibility and that Delgado did not meet the requirements, set forth in INA § 212(a)(9)(C)(ii), 8 U.S.C. § 1182(a)(9)(C)(ii), for the exception because ten years had not passed from the date of Delgado's last departure from the United States and she did not seek permission for readmission before she reentered. After issuing its decision, the CIS immediately notified the ICE of its decision as well as Delgado's prior removal. The ICE then issued a decision reinstating the prior order of removal against Delgado because she had entered the United States without permission after having been removed previously. Delgado challenges the decision by

2

the ICE.

For the reasons that follow, Delgado's petition for review is denied.

**BACKGROUND**

I.    <u>Introduction</u>

Delgado, a native and citizen of Ecuador, first attempted to enter the United States on May 5, 1999, at Houston International Airport, Houston, TX, by fraudulently presenting herself as a returning resident alien. Delgado displayed a visa belonging to her cousin, who also bore the surname Tenesaca Delgado. Delgado was placed in expedited removal proceedings and was returned to Ecuador on the same day, May 5, 1999. In December 2000, Delgado reentered the United States without inspection. Due to her previous removal and illegal reentry, Delgado is ineligible for admission to the United States ("inadmissible"), as she concedes, pursuant to INA § 212(a)(9)(C)(i)(II), 8 U.S.C. § 1182(a)(9)(C)(i)(II). Section 1182(a)(9)(C)(i)(II) provides that aliens who "enter[] or attempt[] to reenter the United States without being admitted" and have previously been "ordered removed" are inadmissible to the United States.

On January 8, 2006, Delgado married a United States citizen. On July 11, 2006, counsel for Delgado filed a visa petition (Form I-130) by Delgado's husband on Delgado's behalf. Counsel also filed forms applying for adjustment of status (Forms I-485, I-485A), seeking a waiver for Delgado's inadmissibility due to her presentation of fraudulent documents on May 5, 1999 (Form I-601), and seeking a waiver, pursuant to 8 C.F.R. § 212.2(e), for her inadmissibility due to her reentry without permission after having been removed (Form I-212). On September 28, 2006, Delgado's application for employment authorization (Form I-765) was approved. On October 26, 2006, Delgado appeared at the office of the CIS in New York City, New York for an

3

interview with a District Adjudications Officer for the purpose of adjudicating her applications for adjustment of status and for permission to reapply for admission. The CIS denied: (1) Delgado's application for adjustment of status; (2) her application for a waiver, pursuant to 8 C.F.R. § 212.2(e), of her inadmissibility due to her reentry without permission after having been removed; and (3) her application for a waiver of her inadmissibility due to the fraud she committed in her first attempt to enter the United States. The CIS determined that Delgado was inadmissible pursuant to INA § 212(a)(9)(C)(i)(II), 8 U.S.C. § 1182(a)(9)(C)(i)(II) because she had reentered the United States without permission after having been removed, that no waiver is available for such inadmissibility, and that Delgado did not meet the requirements for the exception that would allow her to be admitted. The requirements are that ten years pass from the time of the alien's latest departure from the United States and that permission to reenter be sought prior to reentry. On that same date, the District Adjudications Officer notified the ICE of its decision as well as Delgado's prior removal. The ICE then issued a decision reinstating the prior order of removal against Delgado, finding that she was removable as an alien who had reentered illegally after having been removed and that she was therefore subject to reinstatement of the prior order of removal. This timely petition for review followed.

Delgado challenges the reinstatement of the prior order of removal on the ground that she applied for adjustment of status with the CIS pursuant to INA § 245(i), 8 U.S.C. § 1255(i), on July 11, 2006, a date preceding the issuance of the reinstatement order. Delgado claims that, having filed for adjustment of status prior to the reinstatement, she is entitled to an adjudication of the merits of her application for adjustment of status. She argues that she is eligible to have her status adjusted to that of a lawful permanent resident pursuant to INA § 245(i), 8 U.S.C. §

1255(i), which, by its terms, permits adjustment of status for aliens who have "entered the United States without inspection." INA § 245(i)(1)(A)(i), 8 U.S.C. § 1255(i)(1)(A)(i). Delgado also argues that she is eligible for adjustment of status with a waiver pursuant to 8 C.F.R. § 212.2(e), which, according to Delgado, "cures" her inadmissibility. She asserts that she is entitled to such a waiver.

**DISCUSSION**

I.    <u>Standard of Review</u>

This Court reviews a decision by the ICE interpreting the Immigration and Naturalization Act ("INA") according to the standard set forth in <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>:

> If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue . . . the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842–43 (1984). We also accord <u>Chevron</u> deference to decisions of the Board of Immigration Appeals ("BIA") interpreting the immigration statutes, <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 424–25 (1999) (holding that decisions of the BIA interpreting the INA are entitled to <u>Chevron</u> deference), and we give "substantial deference" to BIA decisions interpreting immigration regulations, <u>Jigme Wangchuck v. Dep't of Homeland Sec.</u>, 448 F.3d 524, 528 (2d Cir. 2006).

II.    <u>Applicable Law</u>

    A.    Immigration Statutes and Regulations

        1.    Adjustment of Status

5

Pursuant to INA § 245(a), 8 U.S.C. § 1255(a), an alien "who was inspected and admitted or paroled into the United States" may apply to adjust her immigration status to that of lawful permanent resident if the alien is "admissible" to the United States, among other qualifications. In 1994, Congress enacted a provision permitting aliens who entered without inspection to apply for adjustment of status under certain circumstances without leaving the United States.  INA § 245(i), 8 U.S.C. § 1255(i); see Act of Aug 26, 1994, Pub. L. No. 103-317, § 506(b), 108 Stat. 1765.  Section 1255(i) (the "special adjustment of status provision") provides:

(i) Adjustment of status of certain aliens physically present in United States

(1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States–
(A) who—
(i) entered the United States without inspection . . .

may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

In order to be eligible for adjustment of status under that provision, an alien who entered without inspection must: (i) have an immigrant visa "immediately available," INA § 245(i)(1)(B), 8 U.S.C. § 1255(i)(1)(B); and (ii) be otherwise "admissible" to the United States for permanent residence, INA § 245(i)(2)(A), 8 U.S.C. § 1255(i)(2)(A).

2.      Inadmissible Aliens

A separate provision of the INA sets forth categories of aliens, who, "[e]xcept as otherwise provided in" the INA, are "ineligible to be admitted to the United States."  INA § 212(a), 8 U.S.C. § 1182(a).  Among the categories of aliens deemed inadmissible are those aliens who "enter[] or attempt[] to reenter the United States without being admitted" and who have previously been "ordered removed."  INA § 212(a)(9)(C)(i)(II), 8 U.S.C. § 1182(a)(9)(C)(i)(II).

Section 1182(a)(9)(C)(i)(II) provides a lifetime bar on admission, subject to a discretionary waiver by the Secretary of Homeland Security permitting an alien to reapply for admission from abroad after at least ten years have elapsed since the alien's latest departure from the United States. This "consent to reapply" exception provides that:

> [The permanent bar to admissibility] shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

INA § 212(a)(9)(C)(ii), 8 U.S.C. § 1182(a)(9)(C)(ii).

### 3. Reinstatement Orders

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (the "reinstatement provision") provides that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

### 4. Waivers of Inadmissibility

8 C.F.R. § 212.2(e) provides:

> Applicant for adjustment of status. An applicant for adjustment of status under section 245 of the Act [8 U.S.C. §1255] . . . must request permission to reapply for entry in conjunction with his or her application for adjustment of status. This request is made by filing an application for permission to reapply, Form I-212, with the district director having jurisdiction over the place where the alien resides. If the application under section 245 of the Act has been initiated, renewed, or is pending in a proceeding before an immigration judge, the district director must refer the Form I-212 to the immigration judge for adjudication.

### B. Interpretation of Immigration Statutes by BIA and Federal Courts

At issue in this case is the relationship between INA § 245(i), 8 U.S.C. § 1255(i),

7

permitting discretionary adjustment of status, INA § 212(a)(9)(C)(i)(II), 8 U.S.C. § 212(a)(9)(C)(i)(II), providing that previously removed aliens who reenter the country without permission are inadmissible, and INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) providing for reinstatement of prior orders of removal and barring any relief under the INA for those inadmissible pursuant to section 1182(a)(9)(C)(i)(II).  Also at issue is the effect, if any, of 8 C.F.R. § 212.2(e) on these statutes.

1.      Whether Delgado May Seek Adjustment of Status Without a Waiver

Delgado argues that she is eligible for adjustment of status pursuant to the special adjustment of status provision, notwithstanding the reinstatement provision, because "[b]y its express language" section 1255(i) "is available to" aliens who enter the United States without inspection.  See Pet'r's Br. On Appeal at 8.  Delgado argues that the adjustment of status provision "cures" inadmissibility pursuant to § 1182(a)(9)(C)(i)(II).

The government's position is that, although the special adjustment of status provision authorizes aliens who "entered the United States without inspection" to apply for adjustment of status, see INA § 245(i)(1)(A)(i), 8 U.S.C. § 1255(i)(1)(A)(i), such adjustment is limited to aliens who are "admissible to the United States for permanent residence."  Id. § 245(i)(2)(A), 8 U.S.C. § 1255(i)(2)(A).  According to the government, because Delgado is inadmissible pursuant to INA § 212(a)(9)(c)(i)(II), 8 U.S.C. § 1182(a)(9)(c)(i)(II), she is not eligible for adjustment of status.  For the reasons set forth below, we agree with the government that Delgado is not eligible for adjustment of status pursuant to INA § 245(i), 8 U.S.C. § 1255(i).

We are not persuaded by Delgado's reliance on case law holding that the special adjustment of status provision exempts individuals from inadmissibility pursuant to 8 U.S.C. §

8

1182(a)(9)(c)(i)(I). See Padilla-Caldera v. Gonzales, 453 F.3d 1237 (10th Cir. 2005); Acosta v. Gonzales, 439 F.3d 550 (9th Cir. 2006). Section 1182(a)(9)(c)(i)(I) provides that "any alien who has been unlawfully present in the United States for an aggregate period of more than [one] year" is inadmissible. Padilla-Caldera held that the special adjustment of status provision "trumped" inadmissibility pursuant to section 1182(a)(9)(c)(I) for an alien who had re-entered the United States illegally after having departed at the direction of the INS. Padilla-Caldera is distinct from the case at bar, most notably by the fact that the alien in that case did not violate a removal order — he re-entered the country illegally after having been unlawfully present in the United States for more than one year, not after having been removed from the United States, as Delgado was. The Padilla-Caldera court itself noted the distinction, relying on earlier Tenth Circuit precedent holding that where section 1182(a)(9)(C)(i)(II) applies, the reinstatement provision also applies, barring aliens inadmissible under 1182(a)(9)(C)(i)(II) from seeking "any relief" under the immigration statutes. 453 F.3d at 1243 (explaining that "[t]he imposition of additional punishment for those inadmissible under 1182(a)(9)(C)(i)(II) — namely 1231(a)(5) [the reinstatement provision], which bars this class of aliens from seeking 'any relief' — makes 1182(a)(9)(C)(i)(II) distinguishable") (citing Berrum-Garcia v. Comfort, 390 F.3d 1158, 1163 (10th Cir. 2004) (alterations added)).[3] Acosta is equally unavailing. Acosta relied on Padilla-

_____

[3] Padilla-Caldera is distinguishable on other grounds as well. In that case the alien, Padilla-Caldera, sought relief under the LIFE Act, which temporarily extended to April 30, 2001 permission for illegal entrants to seek adjustment of status from within the United States. The court noted that an important Congressional purpose behind the LIFE Act was "family reunification for illegal entrants and status violators who have otherwise played by the rules." 453 F.3d at 1242 (quoting 146 Cong. Rec. S11263-01 (daily ed. Oct. 27, 2000) (statement of Sen. Hatch)) (emphasis omitted). The court noted that, unlike Padilla-Caldera, aliens inadmissible under 1182(a)(9)(C)(i)(II) have "violate[d] direct court orders," and have therefore not played by the rules. See Padilla-Caldera, 453 F.3d at 1243. The court also considered the

9

Caldera, which, as discussed, distinguished inadmissibility pursuant to section 1182(a)(9)(C)(i)(II) from inadmissibility pursuant to section 1182(a)(9)(C)(i)(I). Acosta also relied on Perez-Gonzalez v. Ashcroft, 379 F.3d 783, 793–95 (9th Cir. 2004), see 439 F.3d at 554 ("Our reasoning in Perez-Gonzalez appears to control the issue now before us."), which, as set forth in greater detail below, has been overruled by the Ninth Circuit, see Gonzales v. Dep't of Homeland Sec., 508 F.3d 1227 (9th Cir. 2007).

Delgado concedes that other circuit courts have held that the special adjustment of status provision does not "cure" inadmissability pursuant to § 1182(a)(9)(C)(i)(II), to which the reinstatement provision applies. Although this Court has not yet ruled on this issue, five sister circuits have so held. See Lino v. Gonzales, 467 F.3d 1077, 1079 (7th Cir. 2006) ("[The reinstatement provision] plainly precludes a previously removed alien who has since illegally reentered the United States from adjusting her status under § 245(i)."); De Sandoval v. U.S. Att'y Gen., 440 F.3d 1276, 1284–85 (11th Cir. 2006); Berrum-Garcia, 390 F.3d at 1163 (holding that once a petitioner's prior removal order has been reinstated, he no longer qualifies for any relief under the INA, regardless of whether his application was filed before or after the reinstatement decision was made); Lattab v. Ashcroft, 384 F.3d 8, 21 (1st Cir. 2004) (holding that "[s]ection 241(a)(5) . . . bars aliens who have illegally reentered the United States after having previously been deported from applying for relief"); Warner v. Ashcroft, 381 F.3d 534, 540 (6th Cir. 2004) (holding that aliens whose prior orders of removal are reinstated under §

fact that Padilla-Caldera "ironically" had departed the United States at the direction of the INS — he departed to apply for a green card after a favorable ruling on a "Petition for Alien Relative" because at the time of such ruling, adjustment of status could only be sought from outside the United States. See Padilla-Caldera, 453 F.3d at 1239.

241(a)(5) should not be eligible for relief under § 245(i) because § 241(a)(5) states that aliens who fall under this provision "may not apply for any relief under this chapter"); Flores v. Ashcroft, 354 F.3d 727, 731 (8th Cir. 2003); see also Padilla v. Ashcroft, 334 F.3d 921, 925 (9th Cir. 2003) (holding that an alien who illegally reenters is not eligible for adjustment of status because the reinstatement provision controls).

The government further argues that the BIA has interpreted 8 U.S.C. § 1182(a)(9)(C)(i)(II) in the same way and that the BIA's interpretation is entitled to Chevron deference. See Chevron, 467 U.S. at 842–43; Aguirre-Aguirre, 526 U.S. at 424–25. In Matter of Torres-Garcia, the BIA dismissed an appeal of an IJ's ruling that an alien who had reentered illegally after having been removed — and was therefore inadmissible pursuant to § 1182(a)(9)(C)(i)(II) — was ineligible for adjustment of status and ineligible for any waiver of that ground of inadmissibility. 23 I. & N. Dec. 866, 867, 877 (B.I.A. 2006). Although Torres-Garcia primarily was concerned with the alien's lack of eligibility for waivers of inadmissibility, we agree with the government that the BIA's position is that an alien inadmissible pursuant to § 1182(a)(9)(C)(i)(II) is ineligible for adjustment of status pursuant to 8 U.S.C. § 1255(i). We now join our sister circuits in holding that an alien who is ruled inadmissible pursuant to 8 U.S.C. § 1182(a)(9)(C)(i)(II), as a result of having reentered this country illegally after having been removed, is ineligible for adjustment of status pursuant to 8 U.S.C. § 1255(i).

2. Whether Adjustment of Status is Available Pursuant to Waiver

An individual who has reentered the United States illegally after having been removed is permanently inadmissible, see 8 U.S.C. § 1182(a)(9)(C)(i)(II), but such an individual may request permission to reapply for admission pursuant to the consent to reapply provision, as

11

described above.  See 8 U.S.C. § 1182(a)(9)(C)(ii).  Delgado claims that the ten-year waiting period before she may avail herself of the consent to reapply provision is "cured" by 8 C.F.R. § 212.2, entitled "Consent to reapply for admission after deportation, removal or departure at Government expense."  The BIA has expressly held, however, that 8 C.F.R. § 212.2 does not operate as a waiver of inadmissibility under 8 U.S.C. § 1182(a)(9), which pertains to "aliens previously removed."  Torres-Garcia held:

> As the language, structure, and regulatory history of 8 C.F.R. § 212.2 make clear, the regulation was not promulgated to implement current section 212(a)(9) of the Act [8 U.S.C. § 1182(a)(9)].  Instead, it was published in response to significant legislative changes brought about by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ("IMMACT").

231 I. & N. at 874.  Torres-Garcia further provides:

> [W]hile 8 C.F.R. §§ 212.2(e) and (i)(2) authorize aliens who are unlawfully present in the United States to seek permission to reapply for admission retroactively in conjunction with an application for adjustment of status, the very concept of retroactive permission to reapply for admission, i.e., permission requested after unlawful reentry, contradicts the clear language of section 212(a)(9)(C), which in its own right makes unlawful reentry after removal a ground of inadmissibility that can only be waived after the passage of at least 10 years.

Id. at 874–75.  Torres-Garcia explained that the consent to reapply provision "clearly specifies the conditions under which waivers of inadmissibility may be granted.  It extends no discretion to the Attorney General or the Secretary of Homeland Security to augment those conditions or to create other less restrictive waivers by regulation."  Id. at 875.  Torres-Garcia explained that waivers for individuals inadmissible pursuant to 8 U.S.C. § 1182 (a)(9)(C)(i)(II) are limited to those "'seeking admission more than 10 years after the date of the alien's last departure from the United States."  Id. (quoting INA § 212(a)(9)(C)(ii), 8 U.S.C.§ 1182(a)(9)(C)(ii)).

Delgado relies on Perez-Gonzalez, which held that 8 C.F.R. § 212.2 permitted an alien

12

who was present in the United States but inadmissible under 8 U.S.C. § 1182 (a)(9)(C)(i)(II) to seek retroactive permission to reapply for admission in conjunction with an application for adjustment of status under section the special adjustment of status provision. 379 F.3d at 793–95. Torres-Garcia, however, expressly rejected Perez-Gonzalez. Torres-Garcia held:

> With all due respect, we believe the Ninth Circuit's analysis regarding the availability of a retroactive waiver of the ground of inadmissibility set forth at section 212(a)(9)(C)(i) contradicts the language and purpose of the Act and appears to have proceeded from an understandable, but ultimately incorrect, assumption regarding the applicability of 8 C.F.R. § 212.2.

23 I & N. at 873. We decline to adopt the reasoning of Perez-Gonzalez. Moreover, Perez-Gonzalez has been expressly overruled by the Ninth Circuit. See Gonzales, 509 F.3d 1227. Gonzales held that Chevron deference was owed to the agency's interpretation of the statutes as set forth in Torres-Garcia, even though that interpretation differed from prior Ninth Circuit precedent interpreting the immigration statutes. We agree with the Gonzales court and accord Chevron deference to the BIA's holding that an applicant who is inadmissible under subsection (a)(9)(C)(i)(II) is ineligible to apply for adjustment of status from within the United States and is bound by the consent to reapply provision, which requires that he seek permission to reapply for admission from outside of the United States after ten years have passed since his most recent departure from the United States. Id. at 10–11.

Delgado argues Torres-Garcia is not controlling because that case ignores a provision in the Violence Against Women and Department of Justice Reauthorization Act of 2005 ("VAWA") that creates a waiver to the bar to admissibility contained in 8 U.S.C. § 1182(a)(9)(C)(ii). At the time Torres-Garcia was decided, section 813(b) of VAWA provided that "[t]he Secretary of Homeland Security, the Attorney General, and the Secretary of State

13

shall continue to have discretion to consent to an alien's reapplication for admission after a previous order of removal, deportation, or exclusion." Pub. L. No. 109-162, 119 Stat. 2960 (enacted Jan. 5, 2006). That provision was removed pursuant to an amendment to VAWA made effective August 12, 2006. See 8 U.S.C. § 1229b. Notwithstanding the effective dates of the VAWA provision relied on by Delgado, we find no relevance of that provision to inadmissibility pursuant to section 1182(a)(9)(C)(i)(II). That provision does not mention section 1182(a)(9)(C)(i)(II) nor can it be read to apply to that section. Section 813(b)(2) also provides that "it is the sense of Congress that [the Secretary of Homeland Security, the Attorney General, and the Secretary of State] should particularly consider exercising this authority in cases under the Violence Against Women Act of 1994 . . . ." Delgado does not allege that VAWA or the Violence Against Women Act of 1994 applies to her. We must reject Delgado's argument that the BIA was required to consider a discrete provision of an unrelated statute.

3.     Effect of Filing for Adjustment of Status Prior to Issuance of Order of Reinstatement

Delgado argues that she is entitled to adjudication of her application for adjustment of status because she submitted her application prior to the issuance of the order of reinstatement. Delgado again relies on Perez-Gonzalez, 379 F.3d at 795, which prohibited reinstatement proceedings until after adjudication of petitioner's application for adjustment. As has been shown, Perez-Gonzalez is unavailing because it has been overruled by Gonzales, which explained:

> In August 2004, we held that a previously removed alien unlawfully present in the United States was eligible to adjust his status under the special adjustment provision provided that he filed an I-212 waiver application prior to the initiation of reinstatement proceedings, notwithstanding the bar to relief from removal contained in [the] reinstatement provision and inadmissibility provision for previously removed aliens unlawfully present in the United States . . . . We hold today that we are bound by the BIA's interpretation of the applicable statutes in In re Torres-Garcia, even though that interpretation differs from our prior interpretation in Perez-Gonzalez. Pursuant to In re Torres-Garcia, plaintiffs as a

14

matter of law are not eligible to adjust their status because they are ineligible to receive I-212 waivers.

508 F.3d at 1231.

Finally, Delgado reasons that she has applied for adjustment of status "affirmatively" by submitting her application prior to the issuance of the reinstatement order. She argues that 8 U.S.C. § 1231(a)(5), the reinstatement provision, bars only "defensive" applications (i.e. applications submitted in response to a removal order) because the term "relief" "denotes" defensive applications. Delgado has made no showing to support her argument that relief should apply only to "defensive" applications. We believe that the statute itself provides that the bar to relief is prospective and not conditioned upon the issuance of an order reinstating the prior order of removal. The reinstatement provision provides that an alien " <u>is not eligible</u> and may not apply for" any relief under the INA. <u>See</u> INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) (emphasis supplied). We stand with the First Circuit in its interpretation of the statute:

> Section 241(a)(5) [the reinstatement provision] subjects an illegal reentrant to three independent consequences: reinstatement of the prior deportation order, ineligibility for any relief, and removal. Grammatically, section 241(a)(5) does not make ineligibility for relief dependent upon reinstatement of the prior deportation order. And even if it did, section 241(a)(5) expressly makes reinstatement retroactive to the date of the original deportation order.

<u>Lattab</u>, 384 F.3d at 16. Moreover, we consider Delgado's application defensive. At the time she applied for adjustment of status, Delgado had already reentered illegally after having been removed, and accordingly was ineligible for any relief under the immigration statutes. In any event, with the issuance of the reinstatement order, her application ripened into a defensive one and the fact that an application for adjustment of status was on file with the CIS has no effect on the authority of the Attorney General to reinstate her prior order of removal.

## CONCLUSION

For the foregoing reasons, the petition for review is denied.

15